SHARP v CITY OF BENTON HARBOR

Docket No. 292389. Submitted April 12, 2011, at Grand Rapids. Decided
April 21, 2011, at 9:05 a.m.

Jeanette Sharp brought an action in the Berrien Circuit Court,
alleging that the city of Benton Harbor negligently maintained a
curb within its jurisdiction. She had been injured when she
stepped onto the curb abutting a street and it crumbled and caused
her to fall. Defendant moved for summary disposition, arguing
that the curb was not within the statutory definition of "highway"
and therefore governmental immunity barred plaintiff's claim.
The court, John E. Dewane, J., denied the motion. Defendant
appealed.

The Court of Appeals *held*:

The first two sentences of MCL 691.1402(1) describe the duty
of a municipality to maintain and repair highways within its
jurisdiction. A curb falls within the statutory definition of "high-
way" because it forms the edge of the road and is an integral
component of the road that facilitates public travel on the road.
Defendant had a duty to repair and maintain the curb of its road
and therefore the trial court did not err in denying defendant's
motion.

Affirmed.

GOVERNMENTAL IMMUNITY — HIGHWAYS — INTEGRAL COMPONENTS OF HIGHWAYS.

A curb falls within the statutory definition of "highway" because it
forms the edge of the road and is an integral component of the road
that facilitates public travel on the road (MCL 691.1401[e]).

*Law Office of Douglas A. Merrow, PLLC* (by *Douglas
A. Merrow*), for plaintiff.

*Secrest Wardle* (by *Steven L. Kreuger*) for defendant.

Before: SHAPIRO, P.J., and FITZGERALD and BORRELLO,
JJ.

PER CURIAM. Jeanette Sharp sustained injuries when she fell from a crumbling curb. Sharp sued the city of Benton Harbor, averring that it had breached a statutory duty to maintain the curb that caused her fall. Benton Harbor moved for summary disposition on the basis of governmental immunity. The circuit court denied Benton Harbor's motion, and Benton Harbor now appeals as of right. For the reasons set forth in this opinion, we affirm.

Late in the evening of May 7, 2007, Sharp walked home near the intersections of Cross and Pearl Streets located in the city of Benton Harbor. Sharp described that as she stepped onto a curb abutting the street, "the curb like crumbled, and I fell to the ground." The curb was neither at the corner nor within a crosswalk. A grass verge separated the curb from the sidewalk. Benton Harbor acknowledges jurisdiction over the curb where Sharp fell.

Sharp filed this action alleging negligent maintenance of the "roadway and curbing." Benton Harbor moved for summary disposition under MCR 2.116(C)(10), contending that because the curb did not fall within the definition of "highway" in MCL 691.1401(e), governmental immunity barred Sharp's claim. The circuit court denied Benton Harbor's motion, relying on *Meek v Dep't of Transp*, 240 Mich App 105; 610 NW2d 250 (2000), overruled in part on other grounds *Grimes v Dep't of Transp*, 475 Mich 72, 73-76 (2006).

We review de novo a circuit court's summary disposition ruling, *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998), as well as its decision concerning the applicability of governmental immunity, *Linton v Arenac Co Rd Comm*, 273 Mich App 107, 112; 729 NW2d 883 (2006). "In reviewing a motion under

MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004); see also MCR 2.116(G)(5).

We first consider whether the circuit court properly applied *Meek* to the facts of this case. In *Meek*, this Court held that "the barrier curb must be considered part of the improved portion of the highway designed for vehicular travel and comes within the highway exception to governmental immunity." *Meek*, 240 Mich App at 113. Sharp urges that *Meek* applies here and controls the outcome of this case. Benton Harbor counters that the Supreme Court overruled *Meek*'s central holding in *Grimes*, 475 Mich at 72, and that a curb defect does not fall within the exception to governmental immunity set forth in MCL 691.1402(1).

We find Sharp's reliance on *Meek* misplaced because that case concerned the portion of MCL 691.1402(1) detailing the highway maintenance duties of state and county road commissions, rather than municipalities. Likewise, we reject Benton Harbor's position that *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143; 615 NW2d 702 (2000), dictates the outcome of this case. In *Nawrocki*, the Supreme Court considered "the extent, if any, to which the highway exception accords protection to pedestrians injured by a condition within the improved portion of the highway designed for vehicular travel." *Id.* at 148. The Supreme Court observed that "[t]he structure of MCL 691.1402(1) . . . is critical to its meaning." *Id.* at 159. The Court continued:

> Thus, we begin by observing that the first and second sentences of the highway exception clause apply to all

governmental agencies having jurisdiction over any high-
way. In contrast, the third and fourth sentences address
more specifically the duty and resulting liability of the
state and county road commissions. Therefore, while we
are constrained to construe the highway exception as a
whole, it is necessary to parse each sentence of the statu-
tory clause to ascertain the scope of the exception, as
determined by the stated policy considerations of the
Legislature. [*Id.* at 159 (footnote omitted).]

Our Supreme Court explained that the fourth sentence
of MCL 691.1402(1) applies only to state and county
road commissions, and "expressly provides that the
limited duty [to repair and maintain] does *not* extend to
'sidewalks, crosswalks, or any other installation outside
of the improved portion of the highway designed for
vehicular travel.' " *Id.* at 161. Our Supreme Court held
that the state's and county road commissions' duties
arise only in the "improved portion of the highway," as
reflected by the plain language of the fourth sentence.
*Id.* at 168. But because the fourth sentence of MCL
691.1402(1) lacks applicability to highways maintained
by municipal corporations, *Nawrocki* affords Benton
Harbor no basis for summary disposition.

The first two sentences of the highway exception to
governmental immunity apply to Benton Harbor's du-
ties in this case:

Except as otherwise provided in section 2a, each govern-
mental agency having jurisdiction over a highway shall
maintain the highway in reasonable repair so that it is
reasonably safe and convenient for public travel. A person
who sustains bodily injury or damage to his or her property
by reason of failure of a governmental agency to keep a
highway under its jurisdiction in reasonable repair and in
a condition reasonably safe and fit for travel may recover
the damages suffered by him or her from the governmental
agency. [MCL 691.1402(1).]

Benton Harbor argues that the circuit court incorrectly denied summary disposition because the following definition of "highway" set forth in MCL 691.1401(e) does not extend to a curb: "[A] public highway, road, or street that is open for public travel and includes bridges, sidewalks, trailways, crosswalks, and culverts on the highway. The term highway does not include alleys, trees, and utility poles."

We now consider whether a curb comes within the definition of "a public highway, road, or street"; an issue of first impression in Michigan. Well-established principles guide our statutory construction efforts. When construing a statute, this Court must ascertain and effectuate the Legislature's intent as expressed in the words of the statute. *Bloomfield Charter Twp v Oakland Co Clerk*, 253 Mich App 1, 10; 654 NW2d 610 (2002). In discerning legislative intent, we endeavor to give effect to every word, phrase, and clause in the statute. *People v Hill*, 269 Mich App 505, 515; 715 NW2d 301 (2006). We construe an act in a manner that harmonizes its provisions, thereby carrying out the legislative purpose. *Id.*

In defining the term "highway," the Legislature set forth examples of structures both included within and excluded from the statutory meaning: " 'Highway' means a public highway, road, or street that is open for public travel and includes bridges, sidewalks, trailways, crosswalks, and culverts on the highway," but "does not include alleys, trees, and utility poles." MCL 691.1401(e). The question before us is whether the Legislature intended that the word "highway" encompasses curbs. "When used in the text of a statute, the word 'includes' can be used as a term of enlargement or of limitation, and the word in and of itself is not determinative of how it is intended to be used." *Frame*

*v Nehls*, 452 Mich 171, 178-179; 550 NW2d 739 (1996). In *Frame,* the Supreme Court interpreted the term "includes" in a limited fashion, "[i]n light of the statute's text and legislative history." *Id.* at 180.

"[C]ontext matters, and thus statutory provisions are to be read as a whole." *Robinson v Lansing*, 486 Mich 1, 15; 782 NW2d 171 (2010). We find that the Legislature's decision to list structures both included within and excluded from the definition of "highway" signals that yet-unidentified structures could fall within the definition of "highway." Alternatively stated, the Legislature intended as illustrative rather than exhaustive the list of structures it "included" within the definition of "highway." By setting forth examples of structures both falling under and outside the definition of "highway," the Legislature contemplated that neither list should be considered complete. Our conclusion comports with the Supreme Court's characterization of the definition of "highway" in MCL 691.1401(e) as "broad." *Nawrocki*, 463 Mich at 182 n 37.

We further consider context in ascertaining whether a curb comes within the meaning of a "highway." *Random House Webster's Unabridged Dictionary* (2d ed, 1998), p 490, defines a curb as "a rim, esp. of joined stones or concrete, along a street or roadway, forming an edge for a sidewalk." Here, the curb travelled along the road and formed an edge for the road itself. Indisputably, passengers entering and exiting parked vehicles often step on curbs. Curbs routinely serve as the frames for travel on public roads and in this sense are integral components of a road. The statutory context also supports that a curb falls within the definition of "highway" expressed in § 1401(e). Each of the five structures expressly identified within the statutory definition of a highway represents a governmentally

constructed object that facilitates public travel on a system of public roads. Vehicles and pedestrians travel on bridges, trailways, crosswalks, and sidewalks; culverts maintain the structural integrity of portions of the road on which cars and people travel. Abrogating immunity for governmental agencies having jurisdiction over these structures fosters the statutory purpose of making highways "reasonably safe and fit for travel." MCL 691.1402(1). By contrast, the items specifically excluded from the purview of MCL 691.1401(e), "alleys, trees, and utility poles," do not contribute to or assist the public's ability to travel. Because the inclusion of curbs within the statutory definition of "highway" comports with legislative intent, we hold that governmental immunity does not bar a claim against a municipality arising from a defective curb.

For the purpose of our construction of Michigan's governmental tort liability act, we recognize the limited precedential value inherent in decisions from other jurisdictions. See *People v Bartlett*, 231 Mich App 139, 146; 585 NW2d 341 (1998) ("Notably, the interpretations that other jurisdictions give to similar or identical language is of limited value in determining what the Michigan Legislature intended . . . ."). Nonetheless, we find worth mentioning that the analyses in several decisions of other state courts express similar views of a curb's function in a highway system. "A curb separated from the sidewalk by a grass strip is a feature of the road, not the sidewalk." *Levin v Devoe*, 221 NJ Super 61,65; 533 A2d 977 (1987). "[T]he term 'street' certainly includes a raised curb on public property at the edge of a roadway . . . ." *Humphries v Trustees of Methodist Episcopal Church of Cresco, Iowa*, 566 NW2d 869, 873 (Iowa, 1997). "A curb and gutter falls under the definition of '[h]ighway defects' or defects on 'other public grounds.' " *VanCleve v City of Marinette*, 2003 WI

2, ¶ 22; 258 Wis 2d 80, 92; 655 NW2d 113 (2003), quoting Wis Stat 81.17. In *Skelly v Village of Port Chester*, 6 AD2d 717; 174 NYS2d 562, 563 (1958), New York's Supreme Court, Appellate Division, construed a municipal law requiring pre-suit notice of any injury sustained "in consequence of any street, highway, bridge, culvert, sidewalk or crosswalk being defective, out of repair, unsafe, dangerous or obstructed." The court opined that "it would require a strained and unrealistic construction or interpretation" of the municipal law "to hold that the curb, which was the dividing line between the part of the street or highway intended for vehicular traffic and the sidewalk, the part intended for the use of pedestrians, was not part of the highway, or part of the street, or part of the sidewalk." *Id.* at 563-564.

We conclude that the curb framing Cross Street constitutes an integral part of the road, and that Benton Harbor bore responsibility for maintaining Cross Street's curb in reasonable repair. Consequently, the circuit court properly denied Benton Harbor's motion for summary disposition.

Affirmed. Plaintiff being the prevailing party may assess costs. MCR 7.219(A).

SHAPIRO, P.J., and FITZGERALD and BORRELLO, JJ., concurred.